UNITED STATES of America,
Appellant,

v.

Donald Leo EDWARDS, Appellee.

No. 85–5294.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1986.

Decided Aug. 20, 1986.

John W. Stone, Jr., Asst. U.S. Atty. (Kenneth W. McAllister, U.S. Atty., Becky M. Strickland, Paralegal Specialist on brief) for appellant.

William L. Osteen (William L. Osteen, Jr., Second Year Law Student, Osteen, Adams, Tilley & Walker, on brief), for appellee.

Before HALL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

The United States appeals from an order of the district court granting the motion of Donald Leo Edwards, defendant in the underlying criminal proceedings, to supress evidence seized pursuant to a search warrant. We reverse.[1]

## I.

According to the evidence developed in the proceedings below, at approximately 6:00 p.m. on January 21, 1985, Detective Tony DiMeo reported to work at the Chatham County, North Carolina, Sheriff's Department and conferred with Detective Isaac Gray. Gray told DiMeo that earlier that day he (Gray) had received phone calls from a woman in another county who stated to him that her sixteen-year old son, Billy Lawrence, was in a house in Chatham County. The caller described the house and stated that she had driven to see it. She also stated to the officer that there were a lot of plants being moved in and out of the house. The woman informed Gray that her son had quit school and left home, and that she was afraid some harm might come to him because he was in the wrong crowd. According to the caller, there were drugs in the house and the male occupant of the house had rented a car to leave for Mexico on a drug-buying trip at 4:00 a.m. the following day.

Shortly after DiMeo arrived at work, he too received a telephone call from the same woman, asking for assistance in removing her son from the house. The caller told DiMeo that she had driven to the house again and had pleaded unsuccessfully with her son to come home. She said that her son told her that he was going to Mexico in the morning. She again stated that plants were being moved in and out of the house and that when she asked her son what kind of plants were involved, she was told, "you don't need to know that." The caller again gave directions to the house and reported that "a John or Don" lived there.

Later that evening, at approximately 9:00 p.m., DiMeo and other officers of the Sheriff's Department drove to the residence which had been described by the female caller. When the officers arrived, Edwards came out to speak with them, but refused DiMeo's request for permission to search the house. After Gray had left to apply for a search warrant from a state magistrate, DiMeo noticed a Datsun and a Chevrolet in the driveway. DiMeo's check of the license plate on the Chevrolet revealed that the automobile was a rented car.

Meanwhile, the sheriff arrived and was speaking with Edwards when a teenager came out of the house. DiMeo put the youngster in the car to talk to him. Although he acted nervous and initially gave DiMeo a fictitious name, the teenager eventually identified himself as Billy Lawrence. Lawrence then told DiMeo that a large quantity of drugs was in the house. Lawrence further stated where each of the drugs would be and the approximate amount.

Subsequently, Gray, who had been gone about 40 minutes, returned. According to Gray, the magistrate did not think the officers had yet established probable cause to search the house but expressed his belief that the officers were "real close."

---

1. This Court has jurisdiction of the government's appeal under 18 U.S.C. § 3731.

After hearing from Gray, DiMeo went to the magistrate's office to report the additional information which he had received from Lawrence. This time the magistrate agreed to issue a warrant. In doing so, he typed up the following affidavit, which DiMeo signed:

On Jan 21, 1985 an informant told Tony Dimeo and Jack Elkins that he had been in the residence of Donald Leo Edwards located near Gulf, N.C. within 24 hrs. of 1–21–85 and had seen a large quanity (sic) of a vegetable substance know (sic) to him as marijuana. He has the ability to recongonnize (sic) marijuana from past experience. The informant indicated that the marijuana may be moved by 4;00 (sic) AM on the (sic) 1–22–85 because the subject Donald Leo Edwards is planning a trip. The informant stated that Donald Leo Edwards has rent (sic) a vehicle bearing license # RE–5549 a chevrolet Monte Carlo Green in color for this trip out of state.

At approximately 11:00 p.m. on January 21, 1985, the magistrate issued a warrant to search Edwards' house and two cars. DiMeo returned to defendant's residence, where he executed the search warrant. Among other drugs and drug paraphernalia, a large bale of marijuana was found in an upstairs bedroom of the house and a sawed-off shotgun was found under a mattress.

On May 28, 1985, Edwards was indicted for possession of an unregistered short-barrelled .410 gauge shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871. Following his indictment, Edwards filed a "motion to dismiss search warrant," which the district court treated as a motion to suppress evidence seized in the search of defendant's residence.

A hearing was held on the matter, during which DiMeo conceded that he did not include verification of Lawrence's reliability in the warrant application in order to protect the youngster. According to DiMeo:

Mr. Lawrence came out of the house and gave me the information. I told that to the magistrate. I didn't put a confiden-

tial, reliable informer [in the affidavit] because I had not used him before, because I wanted to protect him. Because Mr. Edwards would figure out at the time who he was.

DiMeo further testified that:

And the way it works in our county, we come in and we give the magistrate our probable cause, you know, what we have got and he types out the search warrant. Now, I didn't intentionally try to hold back anything from the magistrate.

On cross-examination of DiMeo by Edwards' counsel, the following exchange took place:

Q (Edwards' counsel) So the magistrate from the set of facts set forth in front of him in this affidavit had no way of knowing the reliability or truthfulness of this informer did he?

A (DiMeo) No, sir.

Q Okay; and you gave him no additional facts of your investigation as set forth in this affidavit did you?

A No, sir.

Q And you knew that you had to have one of those two things to support an informer who has not given reliable information in the past. You studied that in your schooling hadn't you?

A Yes, sir.

Several times during the cross-examination, DiMeo stated that he was confused by the questions posed to him by Edwards' counsel on this point.

Following the hearing, the district court granted Edwards' motion to suppress, concluding that the search warrant was defective in failing to provide information about the informant's reliability or credibility. According to the district court, neither the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), nor the "good faith exception" of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), saved the warrant here. The district court reasoned that:

In this case, unlike the *Leon* case, Detective DiMeo provided the information to

the magistrate and executed the subsequent search pursuant to the warrant. He knew when the warrant was issued that the information contained in the application was obtained from an informant. However, Detective DiMeo executed the warrant with knowledge that verification of that informant's reliability, as required by *Gates*, was lacking from the warrant application. Although the rigid two-pronged test of [*Aguilar v. State of Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)] has been abandoned, a magistrate must still find probable cause based on the totality of the circumstances. In a case such as this, where the warrant is based almost entirely on an informant's tip, the totality of the circumstances includes the crucial information regarding the informant's reliability. Since Detective DiMeo knew this information was necessary, his good faith was vitiated, in that, he also knew or should have known the warrant was defective.

The government subsequently moved for reconsideration of the district court's order after a state court judge had concluded that *Leon's* good faith exception applied to the same warrant at issue here. In support of the government's motion for reconsideration, DiMeo filed an affidavit in which he specifically stated that upon arriving at the magistrate's office, he had been placed under oath and had recounted to the magistrate not only the information included in the search warrant affidavit but all of the events which had transpired during the day and evening of January 21, 1985, and which had culminated in the officers' application for the warrant to search Edwards' residence and cars. The district court refused to reconsider its ruling and this appeal followed.

## II.

■ On appeal, the government contends that the issuance of the search warrant was proper under the Supreme Court's decision in *Gates* and that, in any event, the evidence produced by the search is admissible under *Leon*. Without deciding whether the warrant was issued on a showing of probable cause, we conclude that the evidence seized is admissible under *Leon*.

In *Illinois v. Gates*, the Supreme Court held that:

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed.' (citation omitted).

In this case, the affidavit contained the statements of an eyewitness, who had personally observed a large quantity of marijuana in Edwards' residence within the preceding 24–hour period and who stated that the drug might be moved the next day in the rented Chevrolet automobile. The affidavit, though brief, is not wholly conclusory and does contain a certain degree of factual detail, including verification of the rental car.

■ Without question, had the affidavit included the additional information gleaned from the officers' investigation, it would have been sufficient to establish probable cause under *Gates'* totality-of-the-circumstances test. Moreover, if Lawrence had been named or otherwise identified in the affidavit as a nonprofessional, on-the-scene informant, the validity of the warrant might also have gone unquestioned. *Cf. United States v. Burke*, 517 F.2d 377, 380–81 (2d Cir.1975) (a showing of previous reliability is inapplicable to statements supplied by victims of or witnesses to criminal activity). *See also, United States v. Darensbourg*, 520 F.2d 985 (5th Cir.1975) (adopting *Burke's* reasoning). Finally, we note that the statements in the affidavit

were entirely consistent with the other information obtained by the detectives, Gray and DiMeo, earlier in the day and presumably made known to the magistrate when he declined initially to issue a search warrant to Gray. Nevertheless, despite DiMeo's district court affidavit stating that he had informed the magistrate of all of the information, the record in this case discloses no transcript or recording of the proceedings before the magistrate. Under North Carolina law:

> information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official.

N.C.Gen.Stat. § 15A–245(a). In any event, we find it unnecessary to resolve the question concerning the warrant's sufficiency under *Gates*, in light of our determination that the circumstances here clearly met the good faith exception of *Leon*.[2]

### III.

In *United States v. Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant which was issued by a detached and neutral magistrate but ultimately found to be invalid. In reaching this conclusion, the Court in *Leon* emphasized that the standard for assessing the officers' good faith reliance on the magistrate's probable cause determination is one of objective reasonableness, *id.* 104 S.Ct. at 3421, and went on to state that:

> [i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively

reasonable belief in the existence of probable cause.

*Id.* at 3423.

■ Under *Leon*, exclusion remains appropriate where a magistrate failed to perform his neutral and detached judicial function or issued a warrant in reliance on a deliberately or recklessly false affidavit. Exclusion is also the appropriate remedy when the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or when the warrant is so facially deficient (e.g. in failing to particularize the place to be searched or the things to be seized) that it cannot reasonably be presumed to be valid. 104 S.Ct. at 3421–22.

None of these circumstances which would call for exclusion is present in the instant case. Certainly, this is not a case where the magistrate abandoned his judicial role and failed to perform his neutral and detached function. Indeed, there has been no such allegation. Nor is there any basis for concluding that the officers' conduct in preparing the affidavit was dishonest or reckless. To the contrary, the propriety of the officers' conduct is demonstrated by their diligent and repeated efforts to present probable cause to the magistrate in the face of severe time constraints imposed by the possibility of Edwards' imminent departure for Mexico. Furthermore, it was the magistrate—not the officers—who prepared the affidavit by typing it on the application for the search warrant from the information DiMeo gave to him. As the Supreme Court observed in *Leon*:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question

---

**2.** A determination that probable cause is lacking is not always necessary before addressing the good faith exception under *Leon*, particularly, as here, where the Fourth Amendment question posed is not novel or of broad import. *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir. 1985).

the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Id.*, 428 U.S., at 498, 96 S.Ct., at 3054 (BURGER, C.J., concurring). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* 104 S.Ct. at 3420 (footnote omitted).

Moreover, the affidavit in question is more than a "bare bones" recital of wholly conclusory statements and is neither so lacking in probable cause nor so facially deficient as to preclude application of the good faith exception under *Leon.* Contrary to the district court's conclusion, we find that DiMeo's reliance on the warrant was eminently reasonable under the circumstances. In addition to the fact that he had seen the eyewitness, Lawrence, come out of Edwards' residence and had talked to him, DiMeo had also spoken with Lawrence's mother, whose story was entirely consistent with that of her son. DiMeo also knew that the magistrate had previously heard from Gray and had already said they were "real close" in establishing probable cause.

Furthermore, both Gray and DiMeo had appeared before the magistrate and given him information about the events in question. Although these proceedings were not recorded, we find that the failure to do so does not bar application of the good faith exception under *Leon.* In *United States v. Maggitt,* 778 F.2d 1029 (5th Cir.1985), the Fifth Circuit held that good faith reliance on a search warrant was not precluded by the failure to record warrant proceedings. In *Maggitt,* the investigating officers appeared before a city judge who questioned them about portions of their

affidavit. Although, after hearing the officers' responses to the questions, the judge issued the warrant, he failed to record the proceedings as required by Fed.R.Crim.P. 41(c)(1).[3] The Fifth Circuit held that under these circumstances:

It was objectively reasonable for the officers to believe that whatever flaws may have existed in the warrant were cured by the city judge's questions and their answers at the warrant application proceeding, *cf. [United States v.] Merida,* 765 F.2d [1205] at 1214 (objective good faith of officers bolstered by their personal knowledge that search warrant emanated in part from grand jury indictment, although fact of indictment apparently was not set forth in search warrant affidavit), although the proceeding was not recorded, in violation of Fed.R. Crim.P. 41(c)(1). A reasonable police officer would be justified in assuming that the city judge was following the applicable non-constitutionally based portions of the Federal Rules of Criminal Procedure. Although *"Leon* imposes an obligation on the agents, as well as the magistrate, to ensure that a warrant is correctly obtained," *United States v. Freitas,* 610 F.Supp. 1560, 1572 (N.D.Cal.1985), there appears to be no good reason to punish officers by excluding the evidence for the city judge's failure to ensure that the recording requirement of Rule 41(c)(1) was met. That aspect of Rule 41(c)(1) is not designed to deter police misconduct. Exclusion of the evidence is not called for on the facts of this case.

*Id.* at 1036 (footnote omitted). Like the Court in *Maggitt,* we conclude that exclusion of the evidence is not appropriate here and that it was objectively reasonable for the officers in this case to rely on their personal knowledge of the two unrecorded

---

**3.** Fed.R.Crim.P. 41(c)(1) states in pertinent part that:

The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the federal magistrate or state judge may require

the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.

proceedings before the magistrate on the evening of January 21, 1985.

In finding against the government on the good faith issue, the district court impermissibly restricted its focus to DiMeo's subjective belief that information concerning Lawrence's reliability had to be included in the affidavit. The district court's analysis is incorrect for several reasons. In the first place, DiMeo had clearly testified during the suppression hearing that he had given the information about Lawrence to the magistrate, that he had omitted identifying Lawrence in the affidavit to protect him from Edwards, and that he did not intentionally hold back anything from the magistrate. Secondly, DiMeo also made it clear more than once at the hearing that he was confused by the questions being put to him by Edwards' counsel concerning the necessity of including reliability information in the affidavit. Finally, DiMeo's *subjective* belief in what the affidavit should contain is not dispositive of whether the officers could reasonably rely on the warrant. As *Leon* has made clear, the question of reasonable reliance must be evaluated under an *objective* standard based upon all relevant facts. Under this standard, we are satisfied that the good faith exception is applicable here.

### IV.

For the foregoing reasons, the district court's order granting defendant's motion to suppress evidence is reversed.

REVERSED.