UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey S. LEGG, Defendant–Appellant.

No. 93–5262.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1993.

Decided March 1, 1994.

---

**ARGUED:** Hunt Lee Charach, Federal Public Defender, Charleston, West Virginia, for Appellant. Kelly D. Ambrose, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.

Before WILKINS and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.

## OPINION

WILKINS, Circuit Judge:

Jeffrey S. Legg was indicted for possession of a firearm with an obliterated serial number. *See* 18 U.S.C.A. §§ 922(k), 924(a)(1)(B) (West Supp.1993). The district court denied Legg's motion to suppress the firearm, concluding that there was a substantial basis to support the magistrate's determination that probable cause existed for the issuance of a warrant to search his apartment, or, in the alternative, that the good faith exception to the exclusionary rule applied. Legg then entered a conditional guilty plea. *See* Fed.R.Crim.P. 11(a)(2). He now appeals the adverse determination of his motion to suppress, principally arguing that the seizure of the firearm violated his Fourth Amendment rights because the firearm was not included in the warrant as an item for which the search was authorized. Because we conclude that the firearm was validly seized, we affirm.

### I.

When newspaper companies in Charleston, West Virginia began experiencing the theft of money from coin-operated newsstands, five off-duty Kanawha County Sheriff's Deputies were hired to aid in surveillance of the newsstands. The companies informed the deputies that Gerald Tucker, who had previously been apprehended breaking into newsstands, had told them that Legg and James Martin were involved in the thefts. Armed with this information, the deputies began following Legg and Martin. Soon after the surveillance commenced, they observed Legg and Martin leave a restaurant, remove a pair of bolt cutters from the trunk of a car, and break into a newsstand. Legg and Martin were arrested after a brief chase.

Shortly after their arrest, Martin confessed to several thefts from newsstands and told deputies that he and Legg often disposed of the padlocks from the stands by either throwing them on the roof of a nearby building or taking the padlocks with them. An immediate search of the roof of the restaurant near where Legg and Martin had been

observed breaking into the newsstand led to the recovery of a padlock. While the roof of the restaurant was being searched, Martin continued talking to Deputies Young and Putillion, informing them that he and Legg had previously taken coins, change trays, and another set of bolt cutters to Legg's apartment.

In possession of this information, Deputies Young and Putillion proceeded to the office of a state magistrate to obtain a search warrant for Legg's apartment. The deputies first told the magistrate about the recent spree of coin larcenies and related the information supplied by Tucker concerning the individuals involved in the thefts. They also informed the magistrate about their own observations of Legg and Martin, about Martin's statement that led to the recovery of the padlock, and about Martin's statement concerning the storing of the coins and contraband at Legg's apartment. After Deputy Young filled out an affidavit and complaint for a search warrant and was placed under oath, he swore to the truthfulness of the affidavit and complaint and the oral statements he had previously given. Based on this information, the magistrate made a finding of probable cause and issued a search warrant for Legg's residence. The warrant authorized the officers to search Legg's apartment for "large amounts of change, change trays, padlocks or parts thereof, [and] change wrappers."

After the issuance of the warrant, Deputies Young, Putillion, Sullivan, and Crosier, along with Charleston Police Officer James Coyner, proceeded to Legg's apartment to execute the warrant. Upon arrival, the officers conducted a protective sweep of the apartment and identified the occupants as Legg's mother, brother, and his brother's step-sister. The officers requested that these individuals remain seated in the living room while the search was being conducted. Legg's brother refused to cooperate, however, and had to be escorted back to the living room on several occasions. While Deputy Young was searching a closet in Legg's bedroom, he lifted a box from a shelf, inadvertently knocking a pistol to the floor. As he picked up the weapon, Deputy Young noticed that it was loaded. In order to unload it, he turned it over so that the extractor rod located on the underside of the barrel could be removed. When he did this, Deputy Young noticed that the serial number located on the butt of the grip had been scraped off. Realizing this was a federal firearms violation, he seized the weapon.

## II.

The Fourth Amendment requires that items to be seized pursuant to a warrant be "particularly describ[ed]" in the warrant. U.S. Const.Amend. IV. Hence, the seizure of items not described in the warrant violates the Fourth Amendment—and the items should be suppressed—unless an exception to the warrant requirement applies. *See Horton v. California,* 496 U.S. 128, 133–34, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990). Because the pistol seized in Legg's apartment was not included in the warrant as an item for which the search was authorized, it follows that, unless an exception to the warrant requirement is applicable, its seizure was unconstitutional. The Government contends that the seizure of the pistol from Legg's apartment met the requirements of the plain view doctrine and is thus excepted from the warrant requirement. Legg argues that the requirements of the plain view doctrine were not met.

## A.

In order to justify a warrantless seizure under the plain view doctrine, three conditions must be satisfied. *Horton,* 496 U.S. at 136–37, 110 S.Ct. at 2307–08. The first essential predicate is that the seizing officer be lawfully present at the place from which the evidence can be plainly viewed. *Id.* at 136, 110 S.Ct. at 2307. Second, the officer must "have a lawful right of access to the object itself." *Id.* at 137, 110 S.Ct. at 2308. And finally, the object's "incriminating character must ... be 'immediately apparent.'" *Id.* at 136, 110 S.Ct. at 2307 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)).

**1.**

Legg initially argues that Deputy Young's seizure of the pistol could not have been proper under the plain view doctrine because the deputies were not lawfully present in his apartment. This is so, he maintains, for two reasons: 1) because probable cause for the issuance of the warrant was lacking; and 2) because the good faith exception to the warrant requirement does not apply. We turn first to consideration of the good faith exception. *See United States v. Leon,* 468 U.S. 897, 925, 104 S.Ct. 3405, 3421–22, 82 L.Ed.2d 677 (1984) (stating that a reviewing court may proceed to the good faith exception without first deciding whether the warrant was supported by probable cause).

■ Under the good faith exception, adopted by the Court in *Leon,* evidence obtained pursuant to a warrant which is ultimately held invalid need not be excluded as long as the warrant was issued by a detached and neutral magistrate and the executing officers' reliance on the warrant was objectively reasonable. *Id.* at 926, 104 S.Ct. at 3422. In setting forth this doctrine, the Court noted, " '[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.' " *Id.* at 922, 104 S.Ct. at 3420 (alteration in original) (citations omitted). However, the Court also noted that circumstances may exist in which an officer could not manifest objective good faith in relying on a warrant. *Id.* at 922–23, 104 S.Ct. at 3420–21. Legg contends that a number of the circumstances enumerated by the Court prevent the application of the good faith exception in the present case. Principally, he argues that the warrant to search Legg's apartment was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

In order to establish probable cause for the issuance of a search warrant, it is neces-

sary to show that "given all the circumstances set forth in the affidavit[,] . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Deputy Young's affidavit provided the following information: that a confidential informant had identified Legg as one of the individuals involved in the larcenies of the newsstands, that Deputy Young had conducted surveillance of Legg based on this tip and had personally witnessed Legg breaking into a newsstand, and that "suspect was said to be taking bolt cutters & etc. back to his described residence." While there were no facts provided from which the magistrate could have determined that the information concerning the storing of the "bolt cutters & etc." at Legg's apartment was reliable, we are not of the opinion that this affidavit, standing alone, is so lacking in indicia of probable cause that the deputies could not have possessed an objectively reasonable belief that the warrant was valid. *Cf. United States v. Lalor,* 996 F.2d 1578, 1583 (4th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 485, 126 L.Ed.2d 436 (1993) (upholding the denial of a motion to suppress items seized pursuant to a search warrant for the defendant's residence under the good faith exception despite the complete failure of the warrant application to set forth information alleging a connection between the defendant's drug activity and his residence).

■ Moreover, even assuming that the affidavit itself lacked sufficient indicia of probable cause to support reasonable reliance on the warrant, the affidavit did not contain all of the facts presented to the magistrate. As this court has previously concluded, it is proper to consider any contemporaneous oral statements to the magistrate in conjunction with the supporting affidavit in assessing the reasonableness of an officer's reliance on a warrant. *United States v. Edwards,* 798 F.2d 686, 691–92 (4th Cir.1986).[1] Prior to writing his affidavit, Deputy Young orally explained to the magistrate that Tucker, who

---

1. Legg attempts to distinguish *Edwards* on the

ground that prior to considering the officers'

had previously been apprehended breaking into newsstands, was the confidential informant, that Martin, Legg's accomplice, was the source of the information concerning the storing of the proceeds and contraband at Legg's apartment, and that information provided by Martin had led to the recovery of a padlock that had been removed from one of the newsstands. These statements, considered in conjunction with Deputy Young's affidavit, clearly suffice to establish objectively reasonable reliance on the warrant. Therefore, because the deputies possessed an objectively reasonable belief that the warrant was valid, they were lawfully present in Legg's apartment during the execution of the warrant.[2] With the first requirement of the plain view doctrine thus satisfied, we need not additionally determine whether "the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

### 2.

Legg next argues that the second requirement for application of the plain view doctrine was not met because, even if Deputy Young had a lawful right to search the closet, Deputy Young's "lawful right of access" did not extend to unloading the pistol once it had fallen to the floor. Rather, Legg asserts that Deputy Young should either have left the loaded pistol on the floor or replaced the pistol on the closet shelf without unloading it. We disagree.

The requirement of lawful access to an object "is simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Horton*, 496 U.S. at 137 n. 7, 110 S.Ct. at 2308 n. 7. It is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a warrantless search or seizure. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) (allowing an officer, incident to a legitimate stop, to conduct a frisk of an individual's person for weapons when the officer has reason to believe that the individual is armed and dangerous); *Chimel v. California*, 395

---

unrecorded statements in *Edwards*, we concluded that the supporting affidavit was not lacking in sufficient indicia of probable cause. It is his contention that the statement of the Court in *Leon*, that an officer would not manifest objective good faith in relying on a warrant based on an affidavit lacking sufficient indicia of probable cause, categorically precludes application of the good faith exception. Thus, he maintains that, because Deputy Young's supporting affidavit failed to set forth sufficient indicia of probable cause, this court is prohibited from considering the deputies' good faith reliance on the warrant, regardless of whether the affidavit, when considered in conjunction with Deputy Young's oral statements to the magistrate, suffices to establish objectively reasonable reliance on the warrant. We disagree. In *Leon*, the Court did not consider whether an officer's reliance on statements to a magistrate, in conjunction with a deficient affidavit, could be reasonable. The Court merely noted that an officer's reliance on an affidavit that lacked indicia of probable cause could not be reasonable. Because the good faith analysis focuses on the reasonableness of the officer's reliance on the warrant, we do not believe that the presence or absence of a single factor should automatically preclude the application of the good faith exception. Rather than focusing on a single step in the warrant application process, the court should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable. Cf. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 (adopting a "totality-of-the-circumstances" test for determining whether there is probable cause for the issuance of a warrant).

2. We recognize that an officer's reasonable good faith belief in the validity of a warrant does not cause his presence in an individual's home to be any less violative of the Fourth Amendment. *See Segura v. United States*, 468 U.S. 796, 826, 104 S.Ct. 3380, 3396, 82 L.Ed.2d 599 (1984) (Stevens, J., dissenting) (stating that the "Court has repeatedly held that a police officer's good or bad faith in undertaking a search or seizure is irrelevant to its constitutional reasonableness"); *see also Leon*, 468 U.S. at 906, 915 n. 13, 104 S.Ct. at 3411, 3417 n. 13. Nonetheless, we conclude that the rationale of *Leon* should apply to render an officer lawfully present for purposes of applying the plain view doctrine as long as the officer possesses a reasonable good faith belief in the validity of the warrant and the warrant was issued by a detached and neutral magistrate. *See United States v. Morris*, 904 F.2d 518, 519 (9th Cir.1990).

U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969) (allowing an officer to search an individual and the area "within his immediate control" for weapons incident to his arrest); *Ybarra v. Illinois,* 444 U.S. 85, 93, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979) (applying *Terry* analysis in the context of the execution of a search warrant); *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) (extending *Terry* to allow an officer to search the passenger compartment of an automobile); *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990) (extending *Terry* to allow an officer to conduct a protective sweep of the premises during the execution of an arrest warrant). Whether, in light of the perceived threat, a particular search or seizure is reasonable, or within an officer's lawful right of access, is determined by balancing the intrusion on the individual's Fourth Amendment interests against the need to provide for the safety of the officers. *See Buie,* 494 U.S. at 331, 110 S.Ct. at 1096. Clearly, it was reasonable for Deputy Young to conclude that the loaded pistol posed a threat to the safety of those executing the search warrant, particularly when family members of Legg were present, one of whom insisted on walking around the apartment while the deputies conducted the search. Taking temporary possession of the pistol to unload it entailed minimal intrusion on Legg's Fourth Amendment interests and served to virtually eliminate the danger it posed. Therefore, even though Deputy Young could have taken other steps to nullify the threat posed by the pistol, we cannot conclude that the action he actually took exceeded his lawful right of access.

### 3.

As to the third and final requirement of the plain view doctrine, Legg does not dispute that the incriminating character of the weapon was immediately apparent once Deputy Young turned the pistol over. When he saw the obliterated serial number, Deputy Young immediately recognized that the weapon was contraband. No further investigation of the pistol was necessary to discover its incriminating character.

### B.

In sum, the deputies were lawfully present in Legg's apartment because they possessed an objectively reasonable good faith belief that the warrant was valid. Deputy Young's lawful right of access also extended to searching the closet and attempting to unload the pistol that he had inadvertently knocked to the floor. And finally, the incriminating nature of the pistol was immediately apparent when Deputy Young observed the obliterated serial number. Therefore, the seizure of the pistol was proper under the plain view doctrine.

### III.

We have reviewed Legg's remaining contentions and conclude that they are without merit. Accordingly, we affirm the denial of Legg's motion to suppress.

*AFFIRMED*