UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5785

WAYNE BULLARD, a/k/a Michael
Harrod, a/k/a Jeffrey L. Cosby,
a/k/a Ivan Jasper,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Williams, District Judge.
(CR-95-48-AW)

Argued: September 24, 1996

Decided: November 27, 1996

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Dennis Murphy, Jr., Annapolis, Maryland, for
Appellant. Maury S. Epner, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, Greenbelt, Maryland,
for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attor-
ney, Sandra Wilkinson, Assistant United States Attorney, UNITED

STATES ATTORNEY'S OFFICE, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Wayne Bullard appeals his conviction by a jury for unlawful possession of a firearm by a convicted felon. See 18 U.S.C.A. § 922(g) (West Supp. 1996). He contends that the district court erred in denying his motion to suppress the firearm, his motion to suppress his oral confession that he owned the firearm, and his motion to dismiss the indictment on the grounds that § 922(g) violates the Commerce Clause. Finding no error, we affirm.

I.

On January 5, 1995, as part of a bank fraud investigation, Special Agent David Thomas of the United States Secret Service applied for and was granted search warrants for three residences in an apartment complex in Oxon Hill, Maryland. The warrants authorized searches for evidence of bank fraud, such as mail, books, computer records, names, addresses, phone records, bank statements, travel records, identification documents, photographs, and indicia of occupancy of the premises. No arrest warrants were sought or granted. That same day, agents of the United States Secret Service and others executed the search warrants. The fruits of the three searches have led to several convictions and appeals. See, e.g., United States v. Wells, No. 95-5823, 1996 WL 614623 (4th Cir. Oct. 25, 1996); United States v. Evans, No. 95-5783, Slip Op. (4th Cir. Nov. 27, 1996).

Bullard's residence was among those searched. At the time, Bullard was using the alias of Michael Harrod. Agent Thomas testified

2

that before the search, he suspected Harrod's true identity because an informant had testified that Harrod drove a car registered in Bullard's name. Based on this suspicion, Agent Thomas ran a criminal background check in Bullard's name and discovered Bullard's lengthy criminal record. Nevertheless, the search warrant was prepared, approved, and executed in Harrod's name.

The agents entered Bullard's residence, handcuffed Bullard to a chair, read him his Miranda rights, and executed the warrant. During the search, the agents discovered an empty gun box, false identification cards bearing Bullard's photograph, and parole papers in Bullard's name. Concerned about the presence of a gun, the agents asked where it could be found. Bullard responded that it was in his bedroom armoire. The agents located the weapon, made it safe, and seized it.

The agents then arrested Bullard and took him to the Secret Service Office. In transit to the office, the agents again read Bullard his Miranda rights. Upon arrival at the office, the agents questioned Bullard and fingerprinted him. Bullard admitted ownership of the gun, and the fingerprinting confirmed Bullard's true identity.

Bullard was tried and convicted by a jury for possession of a firearm by a convicted felon.[1] On appeal, he raises three challenges: the validity of the search warrant and the seizure of the gun, the admissibility of his inculpatory statements, and the continued jurisdictional validity of 18 U.S.C.A. § 922(g) after United States v. Lopez, 115 S. Ct. 1624 (1995).

II.

Bullard first argues that the gun should have been suppressed. In his view, the agents could not lawfully seize the gun because the search warrant lacked probable cause, failed to qualify for the Leon good faith exception, and described only evidence of bank fraud among the items to be seized. Bullard further claims that neither the

---

[1] Bullard was tried separately and convicted of conspiracy to commit bank fraud and bank fraud. See United States v. Evans, No. 95-5783, Slip Op. (4th Cir. Nov. 27, 1996).

plain view exception nor the protective sweep exception to the warrant requirement is applicable here.

A.

We consider first the validity of the search warrant. Although the sufficiency of a search warrant and its supporting affidavit is reviewed de novo to determine whether a "substantial basis" exists for the magistrate judge's decision, we must accord substantial deference to a determination of probable cause by a neutral and detached magistrate judge. See United States v. Hodges, 705 F.2d 106, 108 (4th Cir. 1983) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

In the search warrant application, Agent Thomas (1) described a number of fraudulent checks made payable to Michael Harrod and cashed in June of 1994; (2) stated that a reliable confidential informant identified Harrod in bank surveillance photos of one of these fraudulent transactions; (3) noted that Harrod's lease application gave false employment information and listed Kevin Wells, also suspected of bank fraud, as his nearest relative; and (4) stated that the handwriting on Harrod's lease application matched the endorsements on the fraudulent checks. Bullard maintains that this warrant application was stale, failed to establish a nexus between his home and the alleged criminal activity, and offered no information to support the reliability of the confidential informant.

Without deciding whether the district court erred in finding probable cause to support the search warrant, we find that the search was unquestionably valid under the good faith exception established in United States v. Leon, 468 U.S. 897 (1984). Here, Agent Thomas "obtained a warrant and abided by its terms," id. at 922, and each challenge raised by Bullard is insufficient "`to render official belief in [the existence of probable cause] entirely unreasonable,'" id. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). Bullard's claim that the warrant was stale falls short because bank records and other evidence of bank fraud are normally retained for a lengthy period of time. See United States v. Fawole, 785 F.2d 1141, 1146 (4th Cir. 1986) (rejecting a staleness challenge because the evidence sought would likely be retained for a lengthy period of time); see also United States v. McCall, 740 F.2d 1331,

4

1336 (4th Cir. 1984) (stating that, in considering staleness claims, the court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized"). Moreover, after Illinois v. Gates, 462 U.S. 213 (1983), a warrant that fails to demonstrate the reliability of an informant is not necessarily invalid, particularly where, as here, the informant's statement is merely corroborative of other evidence presented in the warrant application. Under these circumstances, we cannot conclude that the warrant was "based on an affidavit `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (citations omitted). Therefore, because Bullard does not claim that Agent Thomas lied, or that the magistrate judge abandoned his judicial role, or that the warrant was facially deficient, see id., we hold the search valid under Leon.

B.

Bullard next contends the district court erred in rejecting his argument that, even if the agents were justified in their initial intrusion, they violated the particularity requirement of the Fourth Amendment. He correctly notes that the seizure of evidence not described in the search warrant must be suppressed unless an exception to the warrant requirement applies. See Horton v. California , 496 U.S. 128, 133 n.4 (1990); United States v. Legg, 18 F.3d 240, 242 (4th Cir.), cert. denied, 114 S. Ct. 2761 (1994). The Government responds by claiming that the gun was properly seized under the plain view exception. We agree.

A proper invocation of the plain view doctrine requires the satisfaction of three predicate conditions. The seizing officer must have a right of lawful access to a place from which the evidence can be plainly viewed, as well as a right of lawful access to the seized object itself, and the object's incriminating character must be immediately apparent. Horton, 496 U.S. at 136-37; Legg, 18 F.3d at 242. The first and second conditions are readily satisfied. We have already upheld the initial intrusion as lawful under Leon. Moreover,

> [a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found

5

> . . . . Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

United States v. Ross, 456 U.S. 798, 820-21 (1982) (footnote omitted); see also Legg, 18 F.3d at 244-45 (upholding a search of a closet). Therefore, because evidence of bank fraud might reasonably have been found in the bedroom armoire, the officers did not exceed their authority in searching it.

Bullard argues, however, that the third condition was not satisfied because the gun was not immediately recognizable as contraband if the agent did not know that Bullard was a convicted felon. For support, he claims that the agents did not have probable cause to believe that Harrod and Bullard were the same person. Because no criminal record existed in Harrod's name, he reasons, the agents could not have known that he was a convicted felon until they knew his true identity. We uphold the district court's rejection of this argument. The agents, who knew that Bullard had a lengthy criminal record,[2] also knew that Harrod drove a car registered in the name of Bullard. Moreover, during the search, the agents discovered parole papers in Bullard's name. The agents do not, and need not, contend that they were certain of Bullard's true identity. It is enough that they had probable cause to believe that Harrod was in fact Bullard, and probable cause "does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983).

In any event, even if the agents did not have probable cause to believe that Harrod was Bullard, they had independent probable cause to believe that the gun was contraband. Before seizing the gun, the agents noticed that it had an obliterated serial number. We have previously held that upon discovery of a gun with an obliterated serial number, "[n]o further investigation . . .[is] necessary to discover its incriminating character." Legg, 18 F.3d at 245. Under these circum-

_____

[2] Bullard claims that only the supervising agent, and not the agent who seized the gun, knew of his criminal background. As we explain in United States v. Wells, No. 95-5823, 1996 WL 614623, at *2 (4th Cir. Oct. 25, 1996), the distinction is of no moment.

6

stances, we conclude that it was immediately apparent to the agents that the gun was contraband.**3** Thus the gun was properly admitted under the plain view doctrine.**4**See also Wells, 1996 WL 614623 at *1-*2.

III.

Bullard next argues that his two inculpatory statements should have been suppressed because he was unlawfully arrested and deprived of his Miranda rights. The district court found that Bullard was not arrested until after he arrived at the Secret Service Office, and that he was not "in custody" for purposes of Miranda when he made the two statements. We review these factual determinations for clear error. See United States v. Leshuk, 65 F.3d 1105, 1109 (4th Cir. 1995) (noting that whether a suspect is "in custody" within the meaning of Miranda is subject to clear error review); United States v. Gordon, 895 F.2d 932, 937 (4th Cir.) (stating that whether a seizure occurred "is a question of fact subject to a clearly erroneous standard on appeal") (citations omitted), cert. denied , 498 U.S. 846 (1990). We affirm the district court's rejection of this argument.

A.

Bullard argues that both statements regarding the location and ownership of the gun should have been suppressed as fruits of an unlawful arrest. He first claims that the agents unlawfully arrested him without probable cause by handcuffing him to a chair during the execution of the search warrant. Acceptance of Bullard's argument here would render both oral statements inadmissible. This argument

_____

**3** Bullard also argues that the seizure was unlawful because the agents did not "inadvertently" find it. On this point, he misapprehends the law. Inadvertence, in the sense advocated by Bullard, is not essential to a plain view seizure. See Horton v. California, 496 U.S. 128, 130 (1990) (holding that "even though inadvertence is a characteristic of most legitimate `plain-view' seizures, it is not a necessary condition").
**4** In view of our disposition of the plain view question, we need not consider whether the gun's seizure was also authorized under the protective sweep exception.

7

has been disposed of, however, in <u>Michigan v. Summers</u>, 452 U.S. 692 (1981):

> In assessing the validity of respondent's initial detention, we note first that it constituted a "seizure" within the meaning of the Fourth Amendment. The State does not contend otherwise, and the record demonstrates that respondent was not free to leave the premises while the officers were searching his home. It is also clear that respondent was not formally arrested until after the search was completed. The dispute therefore involves only the constitutionality of a pre-arrest "seizure" which we assume was unsupported by probable cause.

<u>Id</u>. at 696 (footnote omitted). The Court resolved this issue against Bullard's position, holding that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." <u>Id</u>. at 705 (footnotes omitted). Thus, merely restraining Bullard for the duration of the search was not an arrest, and the district court properly rejected Bullard's argument.

Bullard next claims that because a person may be lawfully arrested in his home only pursuant to a valid warrant, <u>see Payton v. New York</u>, 445 U.S. 573 (1980), his apprehension after the discovery of the gun was unlawful. Acceptance of this argument would render only the second oral statement inadmissible. This invocation of <u>Payton</u> is misplaced, however, because the agents were lawfully on the premises pursuant to a search warrant, and Bullard's arrest after discovery of the gun was supported by abundant probable cause. <u>See Mahlberg v. Mentzer</u>, 968 F.2d 772, 774-75 (8th Cir.) (holding that "if a police officer discovers probable cause to arrest while executing a lawful warrant to search the suspect's home," the officer may immediately arrest the suspect), <u>cert</u>. <u>denied</u>, 506 U.S. 1026 (1992). We therefore affirm the district court's conclusion that Bullard's second oral statement was not tainted by an unlawful arrest.

B.

Bullard next argues that, because he never explicitly waived his <u>Miranda</u> rights, his two inculpatory statements should have been sup-

8

pressed. We affirm the district court's rejection of this argument, but we disagree with the district court's rationale. In the district court's view, Miranda did not apply because Bullard was not "in custody." We review this factual finding for clear error. Leshuk, 65 F.3d at 1109. "A suspect is `in custody' for Miranda purposes if the suspect has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed `of the degree associated with a formal arrest.'" Id. at 1108 (quoting Stansbury v. California, 114 S. Ct. 1526, 1529 (1994) (per curiam)). In our view, there can be no question but that Bullard, handcuffed and seated in a chair, was entitled to Miranda protections.

Because the district court erroneously concluded that Bullard was not in custody, it had no occasion to consider whether these protections were adequately observed. Well aware that "we may affirm on any legal ground for which there is a sufficient evidentiary foundation," United States v. Parker, 30 F.3d 542, 547 n.3 (4th Cir.), cert. denied, 115 S. Ct. 605 (1994), we conclude that they were. Immediately after being handcuffed at his residence, Bullard was read his Miranda rights. The agent who read Bullard his rights testified that Bullard claimed to understand his rights, did not appear to be incapacitated in any way, and never invoked his right to counsel. Moreover, Bullard promptly answered when asked about the location of the gun. We have previously explained that "[a] waiver of the right to counsel and the right not to incriminate oneself need not be explicit, but may be inferred from all of the circumstances." United States v. Hicks, 748 F.2d 854, 859 (4th Cir. 1984). More recently, we held that a suspect's acknowledgment that he understood his Miranda rights, combined with voluntary and immediate responses to questions posed by law enforcement officers, sufficed as an implicit waiver. United States v. Frankson, 83 F.3d 79, 82-83 (4th Cir. 1996). Because Bullard willingly responded to questions immediately after acknowledging that he understood his rights, we readily infer that Bullard waived his Miranda rights. Accordingly, we affirm the district court's refusal to suppress Bullard's first oral statement.

Our reasons for rejecting Bullard's Miranda challenge to his first statement remain equally compelling for his second statement. While in transport to the Secret Service offices, Bullard was again read his Miranda rights. Despite receiving two such warnings, Bullard volun-

9

tarily admitted ownership of the gun. We therefore infer that Bullard voluntarily waived his <u>Miranda</u> protections, and we affirm the district court's refusal to suppress the second oral statement.

IV.

Bullard's final challenge on appeal, that the district court should have dismissed his indictment on constitutional grounds under <u>Lopez</u>, 115 S. Ct. at 1624, was rejected in the companion case of <u>Wells</u>, 1996 WL 614623 at *3. In <u>Wells</u>, we distinguished <u>Lopez</u> and held that the jurisdictional element in 18 U.S.C.A. § 922(g)"satisfies the minimal nexus required for the Commerce Clause." <u>Id.</u> Bound by that determination, we reject Bullard's argument. <u>See Norfolk & Western Ry. v. Director, OWCP</u>, 5 F.3d 777, 779 (4th Cir. 1993) (noting that "a panel of this court may not overrule another panel").

V.

In conclusion, we hold that the initial intrusion into Bullard's home was valid under <u>Leon</u>, and that the incriminating firearm was discovered in plain view during a lawful search. We further conclude that Bullard was lawfully arrested and appropriately Mirandized. Finally, <u>Wells</u> forecloses Bullard's jurisdictional objection to 18 U.S.C.A. § 922(g). Accordingly, we affirm Bullard's conviction.

<u>AFFIRMED</u>

10