UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4128

LARCELLE MCWILLIAMS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4159

LEROY ANTHONY THOMAS,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-98-111-HNM)

Submitted: October 8, 1999

Decided: November 10, 1999

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Frederick J. Sullivan, Bowie, Maryland; Thomas W. Farquhar, Alex-
andria, Virginia, for Appellants. Lynne A. Battaglia, United States

Attorney, James C. Howard, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Larcelle McWilliams and Leroy Anthony Thomas of bank robbery and related offenses. On appeal, McWilliams alleges that the district court erred by denying his motion to suppress dye-stained money found on his person. Thomas claims that his Sixth Amendment right to confront witnesses was violated when the prosecutor summarized the expected testimony of a co-defendant during his opening statement, but the witness did not testify during the trial. Finding no error, we affirm.

On February 9, 1998, three men, at least one of whom was armed, robbed a Signet Bank in Baltimore County, Maryland. Although the men wore masks and hoods, they wore distinctive clothing and had clearly defined physical builds. Witnesses observed the men escape through a hole in a chain link fence and drive away with a fourth person in a gold Toyota Avalon. One witness was able to get the license number of the getaway vehicle and furnish it to the police. The witness also observed a dye pack explode during the escape.

Baltimore County police officers found the Avalon parked in front of a private residence and set up surveillance. Shortly thereafter, police observed McWilliams and another man ("Stokes") arrive at the residence in a Nissan Altima.[1] The officers noticed that McWilliams and Stokes matched the descriptions of two of the robbers. While Bal-

_____

[1] The residence belonged to Stokes' sister. The Avalon belonged to Stokes' mother, but his sister regularly drove it.

2

timore County police watched, Baltimore City police approached McWilliams and Stokes to question them in connection with another investigation.**2** The questioning took only a few minutes, and, after the officers left, McWilliams and Stokes entered the house, carrying a large plastic bag and some other items in with them.

A short time later, McWilliams and Stokes reemerged from the home and left in the Altima. Baltimore County officers radioed for assistance in stopping the Altima, which was registered to Thomas. They also notified responding units that the individuals in the car were suspects in an armed bank robbery. A Baltimore City police officer stopped the vehicle. While conducting a protective frisk for weapons, the officer noticed, in plain view, large wads of dye-stained cash in the shallow pockets of the sweat pants worn by McWilliams and Stokes. The officer seized the money and arrested McWilliams and Stokes.

Police ultimately conducted consent searches of Stokes' and his sister's homes. Inside, officers found weapons, clothing, and money associated with the robbery. Police also discovered Thomas, who matched the description of the third robber.

We review for clear error factual determinations made at a suppression hearing, while legal conclusions are reviewed de novo. See United States v. Han, 74 F.3d 537, 540 (4th Cir. 1996). McWilliams raises three grounds upon which he claims the district court should have suppressed the money seized from himself and Stokes. First, McWilliams claims that police lacked probable cause to stop them the second time. He further alleges that the money was not in "plain view." Finally, he asserts that even if the money was visible, its incriminating nature was not readily apparent. We find McWilliams' arguments unpersuasive.

In determining whether the second stop was justified, "our inquiry is a dual one -- whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circum-

_____

**2** Baltimore County and Baltimore City are separate and distinct jurisdictions. There is nothing in the record to suggest that either police force was aware of the other's investigation at the time of this initial stop.

3

stances which justified the interference in the first place." United States v. Swann, 149 F.3d 271, 274 (4th Cir. 1998) (citation and internal quotation marks omitted). It is well settled that a brief, investigatory, warrantless stop of an automobile is permissible if an officer has a reasonable suspicion, based on specific and articulable facts, that the occupants of the car have committed a crime; incontrovertible proof that the suspects are guilty is not necessary. See Terry v. Ohio, 392 U.S. 1 (1968).

McWilliams claims that the second stop was based solely on observations made by the officers in the first stop. [3] We find that this contention is not supported by the record. First, there is no evidence that the first officers communicated their observations to the officer making the second stop prior to the stop. Second, the stop was made at the request of Baltimore County investigators, who had been conducting surveillance on the getaway vehicle and the private residence it was parked in front of. McWilliams and Stokes matched the descriptions of two of the robbers and went inside the residence carrying various items. Based on these facts, we find that Baltimore County investigators had a reasonable basis to suspect that McWilliams and Stokes were involved in the robbery and to request assistance in stopping them. Moreover, because investigators informed the arresting officer that McWilliams and Stokes were suspects in an armed bank robbery, we find that the officer was fully justified in asking them to exit the Altima and conducting a protective frisk for weapons.

In addition to the obvious requirement that items must be plainly visible, evidence may be seized under the "plain view doctrine" under three conditions: (1) the seizing officer must be lawfully present at the scene; (2) the officer must have a lawful right to the seized items; and (3) the incriminating nature of the items must be readily apparent. See United States v. Legg, 18 F.3d 240, 242 (4th Cir. 1994). We find that the money was properly admitted in this case. The arresting officer testified that, without any manipulation whatsoever, he was able to clearly see large wads of dye-stained cash in McWilliams' and Stokes' shallow pockets. This testimony was corroborated by an in-court demonstration in which McWilliams wore the same sweat pants,

_____

[3] The officers making the first stop noticed that McWilliams and Stokes were carrying large amounts of cash and had no identification.

4

and the wad of cash, which was a Government exhibit, was plainly visible in the pocket. For the reasons discussed above, we find that the seizing officer lawfully stopped and frisked McWilliams and Stokes. While McWilliams is correct that money by itself is not inherently incriminating, the money here appeared, in the officer's experience and judgment, to be stained by a dye pack. Given this observation and the fact that the officer knew that the suspects were wanted in connection with a bank robbery, we find that the incriminating nature of these particular wads of cash was readily apparent. Finally, under the circumstances, we find that the officer had a lawful right to seize the money.

Prior to trial, Stokes pled guilty and agreed to cooperate with authorities. Part of this cooperation included testifying against McWilliams and Thomas at trial. Relying on this agreement, the prosecutor, in his opening statement, informed the jury that Stokes had confessed to being one of the robbers and that he would testify that McWilliams and Thomas were the other two. Halfway through the trial, Stokes changed his mind and refused to testify against McWilliams and Thomas. After a hearing outside the presence of the jury, the district court declared Stokes unavailable. The court informed the jury that Stokes was unavailable due to no fault of either party and would not be testifying.

While McWilliams and Thomas requested an instruction advising the jury that it should disregard all references to Stokes' expected testimony, they did not request a mistrial or raise a Confrontation Clause issue at trial. As a result, we review the prosecutor's remarks for plain error and find none. See generally United States v. Olano, 507 U.S. 725, 732-34 (1993). The facts of this case are almost identical to those in Frazier v. Cupp, 394 U.S. 731, 733-35 (1969) (affirming the trial court's denial of a motion for a mistrial). As in Frazier, the prosecutor here objectively summarized the evidence he expected to present, including Stokes' testimony, without emphasizing any portion more than any other. Moreover, the court gave a proper limiting instruction advising the jury that the comments and arguments of counsel were not evidence.

Thomas also challenges the prosecutor's request during closing argument that the jury focus on the "donut and not the hole;"

5

expressly referring to the absence of Stokes' testimony. Neither Thomas nor McWilliams objected to this comment at trial, and we do not find it so obviously prejudicial that it amounts to plain error. During closing, defense counsel attempted to downplay the evidence and Stokes' guilty plea by arguing that McWilliams and Thomas should not be convicted simply because they associated with Stokes. However, the evidence against the Defendants, even without Stokes' expected testimony, was overwhelming. We find that, when taken in context, the prosecutor's comment was merely intended to get the jury to focus on the weight of the evidence.

Accordingly, we affirm McWilliams' and Thomas' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6