**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 08-5068**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

LINDSAY DIANE WILHELM, a/k/a Diamond,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  John Preston Bailey, Chief District Judge.  (3:07-cr-00094-JPB-DJJ-2)

———————

Argued:  December 4, 2009      Decided:  December 30, 2009

———————

Before SHEDD and DUNCAN, Circuit Judges, and T. S. ELLIS, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Brendan S. Leary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant.  Paul Thomas Camilletti, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.  **ON BRIEF:** Sharon L. Potter, United States Attorney, Wheeling, West Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is an appeal from a conviction and sentence for aiding and abetting possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. Appellant Lindsay Wilhelm argues that the district court erred in denying her motion to suppress the evidence seized during the search of her residence. For the reasons set forth below, we affirm.

I.

On February 21, 2007, West Virginia State Troopers Douglas See and Joe Flanagan and United States Marshal Deputies Michael Ulrich and Ronald Stump went to Appellant's residence to search for Gabriel McGuire. McGuire was the subject of a felony arrest warrant for armed robbery. The officers incorrectly believed that Appellant's home was that of McGuire's mother, Paula McDonald. Upon arrival, the officers knocked on the front door and were greeted by Diana Wilhelm, Appellant's mother, who also resided there. The officers told Diana Wilhelm that they were looking for McGuire, and asked if he was there. She answered that she did not know McGuire and that he was not there. The officers then asked if they could enter the residence. Diana Wilhelm opened the door and allowed the officers in.

Once inside, while Trooper See searched the first floor, Deputy Stump remained in the living room speaking with Diana Wilhelm and Christina Wilhelm, Appellant's sister. Deputy Stump described McGuire to them as having a tattoo under his left eye. Christina Wilhelm told Deputy Stump that Appellant's boyfriend, who had a tattoo under his left eye, was upstairs. Upon learning this information, Deputy Stump alerted Trooper See that McGuire was upstairs and the two officers ascended the stairs to the second floor.

Before they could reach the second floor, however, the officers encountered Appellant. Appellant began screaming at them and told them to get out of her house, that they did not have consent to search her residence, and that they needed a search warrant. The officers nevertheless pushed past her to a bedroom on the second floor. There, they saw an individual hiding in a closet. The individual was ordered to come out, which he initially refused to do. When he finally came out, the officers arrested him for obstructing justice by refusing to come out of the closet. To the officers' surprise, the individual inside the closet was not McGuire but rather Joshua Berkley, who coincidently also has a tattoo under his left eye.

After arresting Berkley, the officers searched the closet in which Berkley had been hiding. In it, they found a backpack containing what they believed to be a silencer for a gun. Once

3

Berkley was in custody, Deputy Ulrich lifted up a nearby mattress and found three firearms lying between the mattress and the box springs.

The officers then contacted a West Virginia State Trooper who, based on the items seized in the bedroom, procured a state search warrant for the residence. Pursuant to the warrant, the officers searched the residence and found additional firearms, ammunition, currency, crack cocaine, and other drugs.

On November 14, 2007, Appellant was charged with aiding and abetting possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2, and aiding and abetting possession with intent to distribute hydromorphone in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. The charges were based upon the fact that the drugs seized pursuant to the search warrant had been found inside both Appellant's purse and bedroom. The hydromorphone charge was eventually dismissed pursuant to a motion by the government.

On February 11, 2008, Appellant filed a motion to suppress the evidence obtained at her home. The district court referred the matter to a Magistrate Judge who then issued a Report and Recommendation concluding that the motion should be denied. Appellant filed objections to the Report and Recommendation and the government filed a response to those objections. On April

4

4, 2008, the district court adopted the Report and Recommendation and denied the motion to suppress.

That same day, Appellant entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), preserving her right to appeal the district court's order denying her motion to suppress. Appellant was sentenced to 24 months of imprisonment. This appeal followed.

## II.

Appellant asserts that the search of her home violated the Fourth Amendment's warrant requirement. Under the Fourth Amendment, warrantless searches are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citation omitted) (alteration in original). Two such exceptions arise where the search "is conducted pursuant to consent", id., and where exigent circumstances "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable," Hunsberger v. Wood, 570 F.3d 546, 553 (4th Cir. 2009)(internal quotations omitted).

In denying Appellant's motion to suppress, the district court found that Diana Wilhelm initially consented to the search and that the continuation of the search was justified by exigent

5

circumstances.[1]  Appellant argues that the district court erred in denying her motion to suppress for two reasons.  First, she asserts that the there were no exigent circumstances justifying the search.  Secondly, she asserts that the search was not justified by Diana Wilhelm's consent because Appellant herself validly revoked that consent.  We address each argument in turn.

A.

We first consider whether the district court properly found that exigent circumstances justified the continuation of the search.  "We review factual findings underlying a motion to suppress for clear error and legal determinations de novo." United States v. Gray, 491 F.3d 138, 143-44 (4th Cir. 2007). "The district court's finding of exigent circumstances must be sustained unless it is clearly erroneous."  United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981); see also United States v. Moses, 540 F.3d 263, 270 (4th Cir. 2008).

In analyzing whether exigent circumstances justified a warrantless search, we ask whether the circumstances would cause

---

[1] It is undisputed that Diana Wilhelm, a co-occupant of the home, gave valid consent for the officers' initial entry.  See Georgia v. Randolph, 547 U.S. 103, 109 (2006) (recognizing "the validity of searches with the voluntary consent of . . . a fellow occupant who shares common authority over property") (internal citations omitted).

6

an officer to have "objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992). Examples of such emergencies include "risk of danger to the police or to other persons inside or outside the dwelling." Moses, 540 F.3d at 270 (internal citations omitted).[2]

Here, the district court found that exigent circumstances arose based on the information provided by Christina Wilhelm and on the commotion created by Appellant. The court noted the following exigent circumstances: (1) the officers had good reason to believe that a fugitive armed robber was on the premises; (2) they had reason to believe the fugitive was aware that they were there; and (3) withdrawal from the search could have resulted in a hostage situation or posed danger to the

---

[2] Appellant relies exclusively on the five factors listed in United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1980) to analyze whether exigent circumstances existed. Appellant's exclusive reliance on Turner is misplaced. The factors set forth in Turner contemplated exigent circumstances arising from the potential destruction of contraband evidence. However, the destruction of contraband is only one of several situations that may create exigent circumstances. Moses, 540 F.3d at 270. As the Turner court recognized, "(t)he emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized." Turner, 650 F.2d at 528 (citing United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1973)) (alteration in original).

officers.[3]  These findings are supported by the record.  First, given that the man described by Christina Wilhelm matched the fugitive's unique characteristic of having a tattoo under his left eye, the officers certainly had reason to believe the fugitive was on the premises.  Secondly, given the commotion created by Appellant, the officers had reason to believe that the fugitive was aware of their presence.  Finally, it is objectively reasonable to conclude that a fugitive armed robber who has just become aware that he has been discovered by police may react in a way that poses a danger for those in the immediate vicinity including occupants of the home and law enforcement officers.  Therefore, we cannot say that the district court clearly erred in finding that there were exigent circumstances sufficient to justify the warrantless search.

B.

Because we find that the district court did not err in holding that exigent circumstances justified the warrantless

---

[3] Appellant asserts that some of the officers did not actually perceive any danger.  However, that subjective inquiry is not relevant here.  As the Supreme Court has explained, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, support the action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (internal quotations omitted).

search, we need not determine whether Appellant effectively revoked Diana Wilhelm's consent.  Once the officers had reason to believe that the armed robber was upstairs and aware of their presence, exigency replaced consent as the independent legal justification for the search.

The Supreme Court has recognized this very type of situation.  In Randolph the Court explained:

> Sometimes, of course, the very exchange of information . . . in front of [an] objecting inhabitant may render consent irrelevant by creating an exigency that justifies immediate action on the police's part . . . . [A] fairly perceived need to act on the spot to preserve evidence may justify entry and search under the exigent circumstances exception to the warrant requirement. . . . Additional exigent circumstances might justify warrantless searches.

547 U.S. at 117 n.6.  The Court also recognized that protecting the safety of officers is the type of emergency that would justify a warrantless search.  Id. at 117.  Therefore, any effort by Appellant to revoke consent was moot.

## III.

Accordingly, for the reasons explained above, we

AFFIRM.

9