**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 16-4105

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMESTHY WARDELL GRAHAM,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence.  R. Bryan Harwell, District Judge.  (4:15-cr-00097-RBH-1)

Argued:  January 26, 2017                    Decided:  April 25, 2017

Before GREGORY, Chief Judge, and DUNCAN and FLOYD, Circuit Judges.

Reversed, vacated, and remanded by unpublished opinion.  Chief Judge Gregory wrote the opinion, in which Judge Floyd joined.  Judge Duncan wrote a dissenting opinion.

**ARGUED:**  Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Beth Drake, Acting United States Attorney, Columbia, South Carolina, Alfred W. Bethea, Jr., Assistant United States Attorney, Jason Heggelke, Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

Jamesthy Wardell Graham entered a conditional guilty plea to one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Graham now appeals the district court's denial of his motion to suppress the firearm and ammunition. He argues that the district court erred in finding that exigent circumstances justified the warrantless search and subsequent seizure of the loaded firearm. We agree, and for the reasons that follow, the district court's judgment is reversed.

I.

On the night of May 29, 2014, Deputy Chad Reid of the Florence County Sheriff's Office responded to a 911 hang-up call from a residence in Pamplico, South Carolina. The 911 dispatcher described "hear[ing] people" who "were disorderly in the background" in both the initial hang-up call and when the dispatcher called back. J.A. 44. When Deputy Reid arrived at the residence at 10:27 p.m., he saw two groups of people, one in the yard near the road and one near the residence. He also saw a Chevrolet Tahoe parked illegally in the road, in the traffic lane, with its headlights off. J.A. 44, 52. As Deputy Reid was getting out of his patrol car, the driver of the Tahoe started its engine and "was fixing to leave." J.A. 53. Deputy Reid approached the Tahoe and through its open passenger window told the driver, Defendant-Petitioner Graham, to stop. Deputy Reid shined a flashlight and saw in plain view two open containers of beers in the center console. Deputy Reid told Graham to turn off the Tahoe, hand over his driver's

2

license, and wait while Deputy Reid investigated the source of the 911 call. J.A. 45–46, 53. Graham complied with Deputy Reid's instructions.

Deputy Reid then asked the dispatcher to check for any warrants on Graham and send backup given the number of people on the scene. He began asking people in the yard whether anyone had dialed 911. A woman near the residence eventually responded that she had called because of an argument but that "everything was fine and they didn't need . . . assistance." J.A. 47. There were no problems with any of the people in the yard, J.A. 57, and so Deputy Reid "went back out to deal with Mr. Graham," J.A. 47.

Deputy Reid waited near the Tahoe for backup to arrive. Meanwhile, the dispatcher radioed that there was an outstanding warrant for Graham in Myrtle Beach, South Carolina, with an attachment that said to "use caution, consider armed and dangerous." J.A. 55. The dispatcher did not yet know whether Myrtle Beach would extradite Graham. Deputy Clay Lowder arrived shortly thereafter, and the officers approached the Tahoe and asked Graham to get out. Deputy Reid advised Graham that "he was being detained pending the response from Myrtle Beach." J.A. 59. Deputy Lowder "backed up [Graham] away from the vehicle in the grassy area in the yard" and arrested and handcuffed him. J.A. 70.

After arresting Graham, Deputy Lowder patted him down. Deputy Lowder told Graham that the patdown was for officer safety, and without giving Graham *Miranda* warnings, asked Graham whether he had "any weapons on him or anything that may hurt me or him." J.A. 66. Graham responded that there was a firearm under the driver's seat of the Tahoe. With Deputy Reid securing Graham, who was handcuffed and detained in

3

the residence's yard, Deputy Lowder retrieved the loaded gun from Graham's truck. J.A. 67.

The officers then put Graham in the backseat of Deputy Reid's patrol car. A few minutes later, the officers learned from the dispatcher that Myrtle Beach would extradite Graham. While still on the scene, Deputy Reid ran Graham's information on his computer and discovered that Graham was a convicted felon who could not legally possess a firearm. J.A. 64. Deputy Reid then left the scene to transport Graham to jail. During the drive, Graham asked what his charges would be. Deputy Reid said he told Graham, "[W]ith the gun you leave me no choice." J.A. 51. Graham then explained that "he had the gun for protection because people around Pamplico didn't like him." J.A. 51.

On February 26, 2015, nearly nine months after Graham's arrest, a grand jury indicted Graham for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Graham initially pleaded not guilty and moved to suppress his statements and the gun. The district court denied the motion. It held that Graham's statement about the location of the gun, though the product of custodial interrogation absent *Miranda* warnings, was admissible under *Miranda*'s public safety exception. It further held that Graham's second statement about needing the gun for protection was made voluntarily and not as a result of custodial interrogation, and that it therefore was also admissible. Finally, the court held that the exigent circumstances created by the large group of people in close proximity to the truck, coupled with the 911 disturbance call that was the reason for the officers' presence, justified the warrantless search of Graham's vehicle and subsequent seizure of the gun.

4

On October 26, 2015, Graham entered a conditional guilty plea to one count of being a felon in possession of a firearm and ammunition. He reserved the right to appeal the denial of his motion to suppress his statements and the firearm. The court sentenced Graham to fifty-four months of imprisonment and three years of supervised release. Graham timely appealed to this Court the district court's denial of his motion to suppress the gun.[1]

## II.

When we consider the denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Jones*, 356 F.3d 529, 533 (4th Cir. 2004). We view the evidence in the light most favorable to the prevailing party below. *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011).

The Fourth Amendment provides, in pertinent part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. And as the Supreme Court has held, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 U.S. 347, 357 (1967). In other words, to comply with the Fourth Amendment, police generally must obtain a warrant before conducting a search or seizing personal property. *United*

---

[1] Graham does not challenge on appeal the district court's denial of his motion to suppress his statements to Deputies Reid and Lowder.

*States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). The warrant requirement is "subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. Because the officer who searched Graham's truck and seized the gun did not have a warrant, one of these "jealously and carefully drawn" exceptions must apply for the search and seizure to be constitutional. *Jones v. United States*, 357 U.S. 493, 499 (1958).

Graham argues that none of the exceptions to the warrant requirement apply. The government counters that the warrantless search and seizure were legal under three exceptions to the warrant requirement: the exigent circumstances exception, the automobile exception, and the search-incident-to-arrest exception. The district court upheld the warrantless search and seizure under the exigent circumstances exception. It found that the automobile exception does not apply, and it did not decide whether the search-incident-to-arrest exception applies. We consider these exceptions in turn.

A.

Graham first argues that the exigent circumstances exception to the warrant requirement does not apply, and that the district court therefore erred in denying, pursuant to this exception, his motion to suppress the gun that Deputy Lowder seized during his warrantless search.

Courts have long recognized that exigent circumstances may justify warrantless searches and seizures. *See, e.g.*, *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) ("A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.'"); *United States v. Santana*, 427 U.S. 38, 42 (1976) (finding a warrantless entry into a suspect's home reasonable to prevent the destruction of

6

evidence). And "[i]t is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a warrantless search or seizure." *United States v. Legg*, 18 F.3d 240, 244 (4th Cir. 1994); *see also Warden v. Hayden*, 387 U.S. 294, 298–99 (1967) ("The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others."); *United States v. Yengel*, 711 F.3d 392, 396 (4th Cir. 2013) ("The rationale underpinning the exigent circumstances doctrine is that when faced with an immediate and credible threat or danger, it is inherently reasonable to permit police to act without a warrant.").

For police officers to successfully assert the exigent circumstances exception to the warrant requirement, "they need only possess a 'reasonable suspicion' that such circumstances exist at the time of the search or seizure in question." *Figg v. Schroeder*, 312 F.3d 625, 639 (4th Cir. 2002) (quoting *United States v. Grogins*, 163 F.3d 795, 797 (4th Cir. 1998)). To support this reasonable suspicion, the officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In determining whether the exigent circumstances exception applies, courts must balance "the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence," against "the reasons for prior recourse to a neutral magistrate." *Arkansas v. Sanders*, 442 U.S. 753, 759 (1979), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). We strike this balance "with due deference for the difference in perspective between an officer who must make snap

7

judgments in minutes or seconds, and a judge who has 'the 20/20 vision of hindsight.'" *Mora v. City of Gaithersburg*, 519 F.3d 216, 225 (4th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). And to uphold an officer's actions, we must find that the officer acted with objective reasonableness—that "the facts available to the officer at the moment of the seizure or the search [would] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry*, 392 U.S. at 21–22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

This Court has developed a nonexhaustive list of factors that courts should consider in determining whether exigent circumstances justified a warrantless search or seizure:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981). And recognizing that guns present particular dangers that more readily justify warrantless searches of automobiles, we have stated,

> Though there be no probable cause to believe that any crime has been committed, in some circumstances an automobile reasonably thought to contain a legal handgun may be searched without a warrant by state officers in keeping with the state's broad regulatory role in aid of public safety and security in light of problems confronting a small law enforcement office.

*United States v. Newbourn*, 600 F.2d 452, 454 (4th Cir. 1979).

8

In *Newbourn*, the defendants were arrested after offering to sell an undercover officer a cache of stolen weapons. *Id.* at 453. At the time of the arrest, the defendants' vehicle was parked on a public road, and the defendants were close to the car and in possession of the keys. This Court found that "[a]fter the appearance of the officers, there is no doubt that the defendants would have fled in the vehicle had they not been arrested and the vehicle seized." *Id.* at 458. These circumstances, we said, were of the sort that justified the warrantless search of the vehicle's trunk for the stolen weapons. *Id.* at 454.

Here, the district court found that there were exigent circumstances because of Graham's surroundings at the time of his arrest. The court stated that although Graham had been secured, "a crowd of people remained within walking distance of the Tahoe, and any one of the bystanders could have known the location of the gun." *United States v. Graham*, No. 4:15-CR-00097-RBH-1, 2015 WL 5437147, at *5 (D.S.C. Sept. 15, 2015). The court also pointed to the officers' reason for being there in the first place—a 911 call about a disturbance, the cause of which was unknown to the officers. And the court credited Deputy Lowder's testimony that he believed the circumstances required an immediate search and seizure without a warrant. The court found that this evidence supported the conclusion that "[s]wift recovery of the gun was necessary to preserve the peaceful status quo of the scene," *id.*, and that therefore the exigent circumstances exception to the warrant requirement "permitted Deputy Lowder to immediately locate and secure the pistol to ensure the safety of both the officers and the public," *id.* at *6.

9

We must disagree. Viewed through the lens of the nonexhaustive list of factors we described in *United States v. Turner*, first, there was no apparent urgency since Graham was detained and the scene was peaceful. Second, there is no evidence that the gun was about to be removed or destroyed. Deputy Lowder only testified as to his general belief that he has "a duty to act" to ensure "that [a firearm is] in our possession and safely somewhere so that it doesn't cause any future problems or risk anything escalating in the situation." J.A. 67. Other than this statement, there is no evidence that anyone other than Graham and the officers even knew about the gun, much less that anyone was about to remove or destroy it. Third, there is no evidence indicating there was a possibility of danger to the officers guarding the truck. Deputies Reid and Lowder both testified that everyone in the area, including Graham, was peaceful and cooperative, and the source of the 911 call said that there was no longer any problem. And finally, there was little to no risk of the destruction of evidence, since a gun is not easily destroyed and there was no one in or near Graham's truck.

In a similar case, albeit not in the automobile context, the Ninth Circuit found that the warrantless search of a defendant's tent was unconstitutional. *United States v. Gooch*, 6 F.3d 673 (9th Cir. 1993). There, the officers responded to a report of shots fired by the defendant. When they arrived several hours later, the scene was quiet and the defendant was asleep in his tent. They arrested and secured the defendant and talked to witnesses on the scene, none of whom were "obstructive or threatening." *Id.* at 676. Without a warrant, the officers then searched the defendant's tent and recovered a loaded handgun. The court found that despite the nature of the 911 call, because the defendant was locked

in the back of the patrol car, there was no one in his tent, and "it would not have been difficult to prevent children or anyone else from entering the tent until a warrant was obtained," the warrantless search was unconstitutional. *Id.* at 680 (stating also that to find otherwise "would authorize any warrantless search where officers had reason to believe a firearm was involved").

Likewise here, the scene was peaceful, the defendant and others in the area were cooperating, the truck was unoccupied, and the defendant was detained. And what is more, a firearm was not involved in the crime of arrest and was not the reason for the officers' presence on the scene. There is no evidence that anyone other than Graham and the officers even knew about the gun. We agree with the Ninth Circuit that the presence of a firearm does not alone create an exigency; there must be something more to justify a warrantless search and seizure based on exigent circumstances.[2]

The only evidence of an exigency that we can glean from this record are the officers' conclusory assertions that they acted out of a concern for safety. But the

---

[2] The government argues that in this Circuit, "once an officer has knowledge of a firearm, he or she may search the vehicle to secure the weapon." Appellee's Br. 15. But the cases the government cites in support of this point involved situations where the defendant was unsecured and could still access the weapon. *See United States v. Carico*, 311 F. App'x 572, 574 (4th Cir. 2008) (holding that where vehicle was stopped because an unauthorized weapon was visible in the vehicle and defendant was unsecured and admitted to having a gun in the car, the officer's protective search of the vehicle to secure the weapon was constitutional); *United States v. Forney*, No. 3:12-CR-00381-FDW, 2013 WL 2317700, at *9 (W.D.N.C. May 28, 2013) (finding warrantless recovery of firearm constitutional where defendant was standing next to vehicle unsecured and told officers he had a firearm in the car). These cases therefore do not support such an absolute rule; they instead provide useful examples of circumstances where the presence of a firearm *does* create an exigency.

11

officers' stated interest in public safety is not a trump card; there must be some evidence that the interest was at least implicated, if not compromised, before an officer can contravene the warrant requirement. The presence of some number of people in the vicinity of the arrest—without any evidence that those people were aware of the defendant, his interaction with the police, or that he had a gun under the front seat of his truck—coupled with a 911 hang-up call, is not enough to constitute an exigency. The record does not support the conclusion that an objectively reasonable officer in these circumstances would so fear for his own or the public's safety that he could not seek a warrant before conducting a search and seizure. The warrant requirement is meant to yield only in exceptional and narrow circumstances, and here, the exception's demanding requirements are not satisfied. We therefore find that the exigent circumstances exception to the warrant requirement does not apply.

B.

The government argues that even if there were no exigent circumstances, the warrantless search and seizure were nevertheless proper under the search-incident-to-arrest exception to the warrant requirement. Though the district court did not squarely rule on whether this exception applies, the court stated that "Graham ma[de] a plausible argument that the search incident to arrest exception is inapplicable in this case." *Graham*, 2015 WL 5437147, at *5.

The search-incident-to-arrest exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). In *Gant*, the Supreme Court

outlined the contours of this exception as it applies when an officer lawfully arrests the occupant of an automobile. The "circumstances unique to the vehicle context justify a search incident to a lawful arrest" in two situations: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," and (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)).

This exception plainly does not apply here. The officers had handcuffed Graham and detained him in the yard, away from the Tahoe, at the time of the search and seizure. And the crime that was the basis for his arrest was a two-year-old outstanding warrant for an offense that was unknown to the officers. Graham was therefore not unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search and seizure, and it was not reasonable to believe that evidence of the crime of arrest might be found in the vehicle. Because neither of the situations outlined in *Gant* were present here, we find that the search-incident-to-arrest exception to the warrant requirement does not apply.

C.

Finally, the government contends that the warrantless search and seizure were justified pursuant to the automobile exception to the warrant requirement. Under the automobile exception, officers may search a vehicle without a warrant if the vehicle "'is readily mobile and probable cause exists to believe it contains contraband' or evidence of criminal activity." *United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013) (quoting

13

*Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). Probable cause is present when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is to be determined by "an analysis of the totality of the circumstances," *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004), as "viewed from the standpoint of an objectively reasonable police officer," *Ornelas v. United States*, 517 U.S. 690, 696 (1996). When conducting a warrantless search of a vehicle, law enforcement officers with probable cause are permitted to search "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). And "this exception permits police officers to search a vehicle for evidence of any crime, not just the crime of arrest." *Baker*, 719 F.3d at 319.

The district court found that the automobile exception did not apply. Although Deputy Reid was initially unclear about when he first learned that Graham had a felony conviction and could not legally possess a gun, he ultimately clarified that he learned this information only after Deputy Lowder retrieved the gun. According to the district court,

> It is unclear whether the officers had probable cause—at the time Deputy Lowder found the firearm—to search the Tahoe for evidence of other criminal activity independent of that for which Graham was being detained. There was no testimony by the officers about a state law criminal offense relating to the unlawful possession of a firearm in the vehicle, nor reliable evidence that the officers had been advised *before* the search that Graham was a felon and therefore could not have a firearm. Rather, the only state law criminal violations discussed in the officers' testimony were alleged open container and parking violations.

14

*Graham*, 2015 WL 5437147, at *6 n.11 (citation omitted). The court therefore found that "the record from the suppression hearing does not contain a reliable factual basis to justify application of the automobile exception." *Id.*

We agree with the district court's determination that there is no factual basis to support the conclusion that the officers had probable cause to search Graham's truck based on his prior felony conviction. In fact, we find it clear that Deputy Reid admitted he learned of Graham's felony conviction only *after* Deputy Lowder's warrantless search and seizure. *See* J.A. 64. We therefore hold that at the time of the warrantless search and seizure, an objectively reasonable officer would not believe that he had probable cause to search the truck for contraband, because at that point, there was no evidence that Graham's possession of a firearm was illegal.

The government separately contends that the officers had probable cause to search Graham's truck based on the open containers in plain view. It argues that this independent source of probable cause rendered the warrantless retrieval of the firearm constitutional. We reject this argument for two reasons. First, there is no evidence in the record that Deputy Lowder, who executed the warrantless search and seizure, was even aware of the alleged open containers. We therefore cannot find that he had probable cause to search for evidence of an open container violation. And second, even if Deputy Lowder did have probable cause to search for evidence of an open container violation, he was unequivocal that he retrieved the firearm not as part of such a search, but rather because he felt he had "a duty to act" for safety reasons. J.A. 67. Indeed, until Graham told the officers there was a gun in the truck, the officers did not attempt to search the

15

vehicle at all.  J.A. 71-72.  Though it is true that when officers have probable cause, they may search for evidence of a crime other than the crime of arrest, *Baker*, 719 F.3d at 319, we decline to read this rule to say that *any* source of probable cause cures a warrantless search and seizure—and especially not when that source of probable cause is determined after the fact and where the officers readily admit that their search and seizure was not based on that source of probable cause.

For all of these reasons, we find that the automobile exception to the warrant requirement does not apply.  And because the government has not raised any other possible exceptions to the warrant requirement that might justify Deputy Lowder's warrantless search and seizure, we end our analysis here.

III.

There was no exigency to justify Deputy Lowder's warrantless search and seizure, nor were the search and seizure justified by the search-incident-to-arrest or automobile exceptions to the warrant requirement.  Deputy Lowder should have sought a warrant as the Fourth Amendment demands.  We therefore find that the district court erred when it denied Graham's motion to suppress the gun, and we reverse the district court's judgment, vacate Graham's conviction, and remand for further proceedings.

*REVERSED, VACATED, AND REMANDED*

DUNCAN, Circuit Judge, dissenting:

To find a Fourth Amendment violation here, the majority must characterize as "peaceful" a situation to which officers were summoned by a dispatcher overhearing disorderly activity, must disregard the officers' notification that Graham had an outstanding warrant and was considered armed and dangerous, must refuse to view the facts in the light most favorable to the government, and must discount the district court's express credibility determination. Because on these facts Deputy Lowder's actions were clearly justified by exigent circumstances, I must respectfully dissent.

I.

At approximately 10:30 at night, Deputy Reid responded to the 911 hangup call on which the dispatcher heard disorderly activity. When Deputy Reid arrived, he observed "a large group of people in the yard, two separate groups, one standing outside the roadway, another group standing up around the house." J.A. 44. He also saw a Chevrolet Tahoe parked illegally in the roadway. After viewing the open alcohol containers next to Graham in the vehicle, Deputy Reid called in a warrant check as he sought to ascertain who called 911 and why. Though unhelpful at first, someone in the crowd eventually admitted to calling the police, but said she no longer needed assistance. At this point, Deputy Lowder had not yet arrived on the scene, but because of "the size of the group," Deputy Reid called him and "told him to go ahead and step it up and get there as quick as he could." J.A. 48; *see also* J.A. 58–59 ("I told him to hurry up and get there because of the size of the crowd."). Deputy Reid then received a notification from

17

dispatch that Graham had an outstanding warrant and was to be considered "armed and dangerous." J.A. 48. Before doing anything else, Deputy Reid "waited for Deputy Lowder for safety reasons." J.A. 49. As Deputy Reid testified, "I was not going to get [Graham] out of the vehicle and have a one-on-one confrontation with a large crowd." J.A. 63.

When Deputy Lowder arrived on the scene, he and Deputy Reid asked Graham to exit the vehicle and told him that they were detaining him to wait on Myrtle Beach's response to the outstanding warrant. After removing Graham to the yard away from the vehicle, Deputy Lowder conducted a pat-down to search for weapons. He asked if Graham had any weapons on him or anything that could hurt himself or Deputy Lowder. In response, Graham "volunteered the information that there was a firearm located under the driver's seat of the vehicle." J.A. 66. Deputy Lowder then retrieved the firearm. He testified that he did so "because I have a duty to act and make sure that that's in our possession and safely somewhere so that it doesn't cause any future problems or risk anything escalating in the situation." J.A. 67. Before Graham alerted them to the weapon, neither Deputy Reid nor Deputy Lowder made any attempts to search the vehicle. J.A. 71–72.

II.

When evaluating whether exigent circumstances justify a warrantless search, we look to the totality of the circumstances. *Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013). In performing this task, the majority relies on a set of factors that this court

18

articulated to determine whether concerns over evidence destruction created exigent circumstances. Maj. Op. at 8 (citing *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981)). But an exigency created by concerns that evidence may be destroyed is far different from an exigency arising from law enforcement's fear that officers or bystanders may be in danger.[*] The nature of our inquiry "demands that we evaluate each case of alleged exigency based 'on its own facts and circumstances.'" *McNeely*, 133 S. Ct. at 1559 (quoting *Go–Bart Imp. Co. v. United States*, 282 U.S. 344, 357 (1931)).

The facts and circumstances here require attention to the claimed exigency in this case--concerns over officer and public safety. In conducting this task, we view the evidence in the light most favorable to the government, *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011), giving "particular deference to the district court's credibility findings," *United States v. Moses*, 540 F.3d 263, 268 (4th Cir. 2008). As the majority recognizes, "[i]t is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a warrantless search or seizure." *United States v. Legg*, 18 F.3d 240, 244 (4th

---

[*] We have noted that we cannot rely exclusively on the *Turner* factors in the context of a public-safety rationale because "[t]he factors set forth in *Turner* contemplated exigent circumstances arising from the potential destruction of contraband evidence." *United States v. Wilhelm*, 358 F. App'x 452, 455 n.2 (4th Cir. 2009) (per curiam) (unpublished). *Wilhelm* highlighted that *Turner* itself acknowledged that "[t]he emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized." *Id.* (alteration in original) (quoting *Turner*, 650 F.2d at 528). Even though we have referenced the *Turner* factors when dealing with other exigencies, "[w]e have expanded upon this analytical framework" where, as here, the context warrants. *United States v. Yengel*, 711 F.3d 392, 397 (4th Cir. 2013).

Cir. 1994); *see also Figg v. Schroeder*, 312 F.3d 625, 639 (4th Cir. 2002). The Supreme Court, and many of our sister circuits, have recognized that an unsecured firearm poses a threat to officer and public safety that justifies quick police action. *See, e.g.*, *New York v. Quarles*, 467 U.S. 649, 655 (1984) (creating public-safety exception to Fifth Amendment's *Miranda* requirement); *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007).

The circumstances here reflect that the deputies had a legitimate concern for their safety and those of the bystanders at the scene. The deputies arrived at the scene late at night, in response to a 911 hangup call with disorderly activity overheard in the background. Two groups of individuals--a member of which had placed the 911 call-- were still present near the vehicle. Because of this crowd, Deputy Reid implored Deputy Lowder to hurry up and get to the scene faster. Then, when they conducted the search with the crowd still present, the deputies were aware that Graham was considered "armed and dangerous." And the district court expressly stated that it found Deputy Lowder credible when he testified that he retrieved the gun for safety reasons. Under the totality of the circumstances, the deputies' actions were reasonable.

In its myopic focus on the exact moment of the search, the majority loses sight of the nature of the scene at which the deputies arrived. Its description of the scene as "peaceful" is belied by the deputies' testimony and the district court's credibility determinations. Armed with the benefit of hindsight, the majority second guesses the judgment calls the deputies on the scene made. More important, the majority loses sight of the "touchstone" by which we judge actions under the Fourth Amendment:

20

reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Because I believe the deputies acted reasonably under the circumstances, I would hold that Deputy Lowder's targeted search to retrieve the weapon from the vehicle does not violate the Fourth Amendment. I respectfully dissent.