DUNCAN, Circuit Judge,
dissenting:
To find a Fourth Amendment violation here, the majority must characterize as “peaceful” a situation to which officers were summoned by. a dispatcher overhearing disorderly activity, must disregard the officers’ notification that Graham had an outstanding warrant and was considered armed and dangerous, must refuse to view the facts in the light most favorable to the government, and must discount the district court’s express credibility determination. Because on these facts Deputy Lowder’s actions were clearly justified by exigent circumstances, I must respectfully dissent.
I.
At approximately 10:30 at night, Deputy Reid responded to the 911 hangup call on which the dispatcher heard disorderly activity. When Deputy Reid arrived, he observed “a large group of people in the yard, two separate groups, one standing outside the roadway, another group standing up around the house.” J.A. 44. He also saw a Chevrolet Tahoe parked illegally in the roadway. After viewing the open alcohol containers next to Graham in the vehicle, Deputy Reid called in a warrant check as he sought to ascertain who called 911 and why. Though unhelpful at first, someone in the crowd eventually admitted to calling the police, but said she no longer needed assistance. At this point, Deputy Lowder had not yet arrived on the scene, but because of “the size of the group,” Deputy Reid called him and “told him to go ahead and step it up and get there as quick as he could.” J.A. 48; see also J.A. 58-59 (“I told him to hurry up and get there because of the size of the crowd.”). Deputy Reid then received a notification from dispatch that Graham had an outstanding warrant and was to be considered “armed and dangerous.” J.A. 48. Before doing anything else, Deputy Reid “waited for Deputy Lowder for safety reasons.” J.A. 49. As Deputy Reid testified, “I was not going to get [Graham] out of the vehicle and have a one-on-one confrontation with a large crowd.” J.A. 63.
When Deputy Lowder arrived on the scene, he and Deputy Reid asked Graham to exit the vehicle and told him that they were detaining him to wait On Myrtle Beach’s response to the outstanding warrant. After removing Graham to the yard away from the vehicle, Deputy Lowder conducted a pat-down to search for weapons. He asked if Graham had any weapons on him or anything that could hurt himself or Deputy Lowder. In response, Graham “volunteered the information that there was a firearm located under the driver’s seat of the vehicle.” J.A. 66. Deputy Low-der then retrieved the firearm. He testified that he did so “because I have a duty to act and make sure that that’s in our possession and safely somewhere so that it doesn’t cause any future problems or risk anything escalating in the situation.” J.A. 67. Before Graham alerted them to the weapon, neither Deputy Reid nor Deputy Lowder made any attempts to search the vehicle. J.A. 71-72.
II.
When evaluating whether exigent circumstances justify a warrantless search, we look to the totality of the circumstances. Missouri v. McNeely, 569 U.S. 141, 133 S.Ct. 1552, 1559, 185 L.Ed.2d 696 (2013). In performing this task, the majority relies on a set of factors that this court articulated to determine whether concerns over evidence destruction created exigent *176 circumstances, Maj. Op. at 170-71 (citing United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981)). But an exigency created by concerns that evidence may be destroyed is far different from an exigency arising from law enforcement’s fear that officers or bystanders may be in danger,* The nature of our inquiry “demands that we evaluate each case of alleged exigency based ‘on its own facts and circumstances.’” McNeely, 133 S.Ct. at 1559 (quoting Go-Bart Imp. Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931)).
The facts and circumstances here require attention to the claimed exigency in this case—concerns over officer and public safety. In conducting this task, we view the evidence in the light most favorable to the government, United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011), giving “particular deference to the district court’s credibility findings,” United States v. Moses, 540 F.3d 263, 268 (4th Cir. 2008). As the majority recognizes, “[i]t is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a war-rantless search or seizure.” United States v. Legg, 18 F.3d 240, 244 (4th Cir. 1994); see also Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir. 2002). The Supreme Court, and many of our sister circuits, have recognized that an unsecured firearm poses a threat to officer and public safety that justifies quick police action. See, e.g., New York v. Quarles, 467 U.S. 649, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (creating public-safety exception to Fifth Amendment’s Miranda requirement); United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007).
The circumstances here reflect that the deputies had a legitimate concern for their safety and those of the bystanders at the scene. The deputies arrived at the scene late at night, in response to a 911 hangup call with disorderly activity overheard in the background. Two groups of individuals—a member of which had placed the 911 call—were still present near the vehicle. Because of this crowd, Deputy Reid implored Deputy Lowder to hurry up and get to the scene faster. Then, when they conducted the search with the crowd still present, the deputies were aware that Graham was considered “armed and dangerous.” And the district court expressly stated that it found Deputy Lowder credible when he testified that he retrieved the gun for safety reasons. Under the totality of the circumstances, the deputies’ actions were reasonable.
In its myopic focus on the exact moment of the search, the majority loses sight of the nature of the scene at which the deputies arrived. Its description of the scene as “peaceful” is belied by the deputies’ testimony and the district court’s credibility determinations. Armed with the benefit of hindsight, the majority second guesses the judgment calls the deputies on the scene made. More important, the majority loses sight of the “touchstone” by which we *177 judge actions under the Fourth Amendment: reasonableness. Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Because I believe the deputies acted reasonably under the circumstances, I would hold that Deputy Lowder’s targeted search to retrieve the weapon from the vehicle does not violate the Fourth Amendment. I respectfully dissent.

 We have noted that we cannot rely exclusively on the Turner factors in the context of a public-safety rationale because "[t]he factors set forth in Turner contemplated exigent circumstances arising from the potential destruction of contraband evidence.” United States v. Wilhelm, 358 Fed.Appx. 452, 455 n.2 (4th Cir. 2009) (per curiam) (unpublished). Wilhelm highlighted that Turner itself acknowledged that "[t]he emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized.” Id. (alteration in original) (quoting Turner, 650 F.2d at 528). Even though we have referenced the Turner factors when dealing with other exigencies, ”[w]e have expanded upon this analytical framework” where, as here, the context warrants. United States v. Yengel, 711 F.3d 392, 397 (4th Cir. 2013).